FILED'10 DEC 15 16:42 USDC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Case No.** _10 CR 506-BR_ |
| v. | **INDICTMENT** |
| **HOSSEIN LAHIJI;** | Title 18 U.S.C. § 371: Conspiracy to Defraud the United States (Count 1) |
| **NAJMEH VAHID; and** | |
| **AHMAD IRANSHAHI,** a.k.a. "Farhad;" | Title 18 U.S.C. § 1956(h): Conspiracy to Commit Money Laundering |
| **Defendants.** | 18 U.S.C. § 982(a)(1): Forfeiture |

### THE GRAND JURY CHARGES:

### Introductory allegations

At all times relevant to this indictment:

1.      Defendant HOSSEIN LAHIJI was a naturalized citizen of the United States and a physician residing in Texas. Defendant NAJMEH VAHID a.k.a. LAHIJI was a permanent resident of the United States and the wife of defendant HOSSEIN LAHIJI, also residing in Texas.

2.      Mehrdad Yasrebi a.k.a. Abu Torab, a co-conspirator charged elsewhere, was a citizen of Iran and a permanent resident of the United States residing in Clackamas, Oregon.

3.      Child Foundation, a co-conspirator charged elsewhere, was a Domestic Non-Profit corporation which Yasrebi formed in Oregon in or about May 1994. From the inception of Child Foundation, defendant Yasrebi was its president and registered agent. LAHIJI and VAHID were substantial contributors to Child Foundation, having contributed more than $1.8 million between

Page 1 - INDICTMENT

1998 and 2007.

4.    Refah Kudak Charity Institute, also known as Child Foundation Iran, was established in Shiraz, Iran, in approximately 1999. The founders of Refah Kudak included Mehrdad Yasrebi, his parents, and his cousin, defendant AHMAD IRANSHAHI. Mehrdad Yasrebi and Child Foundation exercised substantial control over Refah Kudak aka Child Foundation Iran, including providing funds for its employees, overhead and costs of operation, such that it was the alter ego of Child Foundation. After approximately 1999, Child Foundation funneled the overwhelming majority of its revenue, including donations from defendants LAHIJI and VAHID, to Iran through Refah Kudak aka Child Foundation Iran.

5.    Defendant AHMAD IRANSHAHI was a citizen and resident of Iran residing in Tehran, and the cousin of Mehrdad Yasrebi. IRANSHAHI was the Director, Treasurer and a member of the board of directors of Refah Kudak aka Child Foundation Iran. LAHIJI and VAHID maintained one or more financial accounts with Refah Kudak aka Child Foundation Iran.

6.    Based upon an application by Yasrebi, the Internal Revenue Service ("IRS") recognized Child Foundation as a tax-exempt charitable non-profit organization under section 501(c)(3) of the Internal Revenue Code in January 1995.

7.    Because Child Foundation received tax-exempt status, it was required to file an "information return" known as a Form 990, *Return of Organization Exempt from Income Tax,* with the IRS each year in which its gross receipts exceeded a minimum threshold. One purpose of the Form 990 information return was to enable IRS to exercise oversight authority over tax-exempt organizations such as Child Foundation. Such authority included, but was not limited to, determining whether an organization qualified for continued tax exempt status, as well as

**Page 2 - INDICTMENT**

whether the organization and associated individuals had incurred tax liabilities. The information return was required to set forth, among other things, Child Foundation's total revenue, total expenses, net assets, charitable disbursements, program service accomplishments, and the names and addresses of its substantial contributors and the amounts they contributed for the year. If the IRS determined from a review of a Form 990 that a tax exempt organization was not operating consistently with its tax exempt status, or was operating illegally or in violation of public policy of the United States, then the IRS would consider sanctions including revoking the tax exemption, as well as assessing any taxes that might result. Another purpose of the Form 990 information return was to provide transparency of the operations of tax exempt organizations such as the Child Foundation to the public. Forms 990 filed by charitable organizations were required to be made available for inspection by the public.

8.      The President of the United States, by virtue of an Act of Congress known as the International Emergency Economic Powers Act ("IEEPA"), is granted authority to impose trade restrictions, sanctions, and embargos to deal with unusual or extraordinary threats to the national security and foreign policy of the United States. The President's formal directives in this regard are issued through Executive Orders which have the force and effect of law. On March 15, 1995 President Clinton declared a national emergency with respect to Iran, finding that the policies and actions of the Government of Iran constituted a threat to the national security of the United States due to Iran's support of international terrorism, its efforts to undermine the Middle East peace process, and its attempts to acquire weapons of mass destruction. On May 6, 1995, President Clinton issued Executive Order 12959, which imposed sweeping restrictions on trade and financial transactions with Iran extending to goods, services, and technology. The Executive

Page 3 - INDICTMENT

Order included restrictions on the financing, brokering, or facilitation of prohibited transactions by U.S. persons (hereafter the "Iranian Embargo" or "embargo").  On August 19, 1997, the President issued Executive Order 13059, which clarified and consolidated the provisions of the previous executive orders imposing trade sanctions against Iran.  The Executive Orders empowered the Secretary of Treasury to promulgate regulations and take other action necessary to fully realize the purposes of the relevant Executive Orders.

9.    To implement the Iranian Embargo, the United States Treasury Department, through the Office of Foreign Assets Control (OFAC), issued amended Iranian Transactions Regulations in April 1999.  These regulations prohibited United States persons from engaging in any transaction related to the sale or supply of goods or services to Iran, or any entity owned or controlled by the Government of Iran, unless authorized by the Treasury Department through OFAC by the issuance of a license.  Unless a license were obtained, the regulations prohibited United States persons from (among other things):  (1) engaging in transactions that evaded or avoided, or had the purpose of evading or avoiding, the Iranian embargo (31 CFR §§ 560.203);  (2) exporting or re-exporting goods or services to Iran (31 C.F.R. §§ 560.204 and 560.205);  (3) engaging in or facilitating transactions related to goods or services of Iranian origin, or owned or controlled by the Government of Iran (31 CFR § 560.206);  (4) making any new investment in Iran or in property owned or controlled by the Government of Iran (31 CFR § 560.207);  (5) facilitating transactions by a foreign person that would be illegal if performed by a United States person or in the United States (31 C.F.R. § 560.208);  and, (6) trading in, exporting, or re-exporting bulk agricultural commodities for resale in Iran or to the Government of Iran (31 CFR §§ 560.530). The Iranian Transaction Regulations provided for limited exemptions for non-commercial

**Page 4 - INDICTMENT**

donations by United States persons of articles, such as food, clothing and medicine, intended to relieve human suffering (31 CFR 560.210).

10.    Grand Ayatollah Makarem Shirazi was an Iranian cleric and a supporter of Hizballah and the Islamic Republic of Iran.  In addition to the embargo discussed above, Iran was designated as a State Sponsor of Terrorism by the United States Department of State in 1984.  The United States Treasury Department listed Hizballah as a Specially Designated Terrorist since 1995, and a Specially Designated Global Terrorist since 2001.  The United States Department of State designated Hizballah as a Foreign Terrorist Organization in 1997.

## COUNT 1
### (Conspiracy to Defraud the Treasury Department of the United States)

11.    The introductory allegations are incorporated as if fully set forth herein.

12.    Beginning in or around May, 1995, and continuing until at least July, 2008, in the District of Oregon and elsewhere subject to the jurisdiction of the United States, defendants HOSSEIN LAHIJI, NAJMEH VAHID aka NAJMEH LAHIJI, and AHMAD IRANSHAHI did intentionally, knowingly and willfully conspire with each other and with persons known and unknown to the Grand Jury to:

(1)    defraud the United States for the purpose of impeding, impairing, obstructing and defeating the lawful functions of the Office of Foreign Assets Control of the Treasury Department by deceitful or dishonest means in the administration and enforcement of the Iranian embargo; and,

(2)    defraud the United States for the purpose of impeding, impairing, obstructing, and

Page 5 - INDICTMENT

defeating the lawful functions of the Internal Revenue Service of the Treasury Department by deceitful or dishonest means in the oversight of organizations exempt from income tax under Section 501(c)(3) of the Internal Revenue Code, and in the ascertainment, computation, assessment and collection of the revenue, that is, income taxes;

In violation of Title 18, United States Code, Section 371.

### Manner and Means of the Conspiracy

13.     During the course and in furtherance of the conspiracy, Mehrdad Yasrebi organized Child Foundation in order to attract charitable donations in the United States and thereafter transfer virtually all of its revenues from the United States to Iran.  Yasrebi consulted with and sought approval, support and monetary assistance for the founding of Child Foundation from the Hizballah "brothers," Iranian diplomats, Iranian ayatollahs, and other Iranian governmental representatives.

14.     During the course and in furtherance of the conspiracy, Yasrebi and IRANSHAHI established Refah Kudak aka Child Foundation Iran in approximately 1999 in order to receive and disburse funds and services transferred from the United States to Iran.  Using Refah Kudak aka Child Foundation Iran, Yasrebi, IRANSHAHI and Child Foundation purchased goods and services in Iran, made investments in Iran, exported goods and bulk agricultural commodities to Iran, and provided services to Iran which were in violation of the Iranian embargo.  Child Foundation provided a substantial majority of Refah Kudak's revenues.

15.     During the course and in furtherance of the conspiracy, HOSSEIN LAHIJI and NAJMEH VAHID provided purported charitable donations to Child Foundation.  Thereafter, Yasrebi, Child

Page 6 - INDICTMENT

Foundation, IRANSHAHI, and Refah Kudak aka Child Foundation Iran used some of the donations to create financial accounts in Iran over which LAHIJI and VAHID retained an interest and control. Some of the LAHIJI/VAHID funds were used to purchase and maintain real property in Iran, establish new investments in Iran, and acquire services in Iran, in violation of the embargo. Yasrebi and Child Foundation provided LAHIJI and VAHID with written receipts documenting the donations in order to facilitate exaggerated claims of charitable tax deductions on their personal income tax returns. LAHIJI and VAHID backdated some of the donation checks, and Yasrebi and Child Foundation backdated some of the receipts, in order deceive the IRS and to make it appear that LAHIJI and VAHID were entitled to charitable deductions for a prior year. LAHIJI and VAHID then represented to the IRS that the payments to Child Foundation were charitable donations for a year subsequent to the donation. IRANSHAHI, Yasrebi and Child Foundation ensured that there were periodic accountings for the funds held in Iran on behalf of LAHIJI and VAHID.

16. During the course and in furtherance of the conspiracy Yasrebi, IRANSHAHI, and Child Foundation transferred and arranged for the transfer of substantial sums of money from the United States to Iran, including funds provided by LAHIJI and VAHID. The parties used various methods to accomplish the transfers which were designed to evade the embargo and avoid detection and restrictions placed upon the U.S. banking system for the transfer of funds to Iran. During the course and in furtherance of the conspiracy Yasrebi, IRANSHAHI and Child Foundation engaged in financial transactions in Iran in which they would split the proceeds of certain donations with Iran's Grand Ayatollah Makarem Shirazi.

17. During the course and in furtherance of the conspiracy, Yasrebi and Child Foundation

Page 7 - INDICTMENT

filed Form 990 *Returns of Organization Exempt from Income Tax* from 1998 to 2007 that failed to reveal that virtually all of its resources were directed toward the Islamic Republic of Iran, and that were false in several other respects, in order to defeat and impair IRS' oversight function and its ability to ascertain and collect revenue.

18.    In the course and in furtherance of the conspiracy, Yasrebi, IRANSHAHI and Child Foundation misrepresented the true facts to U.S. auditors, and created, altered, and utilized false and fraudulent documentation and provided it to U.S. auditors and tax return preparers in order to disguise and conceal the fact that they were violating the embargo, and in order to deceive the public, the IRS, and OFAC.

### Overt Acts

19.    During the course and in furtherance of the conspiracy, and in order to accomplish its purposes, defendants committed and caused to be committed the following overt acts in the District of Oregon and elsewhere:

(1)    From on or about July 21, 1997 to on or about June 5, 2002, Mehrdad Yasrebi and Child Foundation transferred approximately $1,779,170 of Child Foundation funds, including funds supplied by defendants LAHIJI and VAHID, to Iran in approximately twenty-eight transactions in order to conduct, engage in, and facilitate transactions related to goods and services in and to Iran and the Government of Iran, and goods and services of Iranian origin, in part in violation of, and to evade, the embargo. The parties utilized various money transmitters including Alex Eskandar Khamooshpour and "E Khamooshpour Capital Service" or "EKCS," "Ocean Pride Seafood," "Ras Al Khaimah Exchange," "AZHAR Exchange," "Alireza Asiaii," "Al-Ek Tasad," and other individuals and

Page 8 - INDICTMENT

businesses, each transaction comprising a separate overt act.

(2)    On or about February 1, 1999, Mehrdad Yasrebi deposited a $100,000 check payable to Child Foundation written by NAJMEH VAHID on a business account of HOSSEIN LAHIJI dated December 31, 1998. Yasrebi issued a receipt dated December 31, 1998 to assist LAHIJI and VAHID obtain a charitable tax deduction.

(3)    On or about April 10, 1999, Mehrdad Yasrebi and AHMAD IRANSHAHI, among others, caused Refah Kudak aka Child Foundation Iran to be formally established and recognized by the Islamic Republic of Iran in Shiraz, Iran.

(4)    From on or about October 8, 1999, through on or about December 27, 2007, Mehrdad Yasrebi and Child Foundation filed annual Form 990 tax returns for Child Foundation with the Internal Revenue Service for tax years 1999 through 2007 that described Child Foundation having provided charitable support in a variety of countries. The returns repeatedly and consistently failed to reveal that the overwhelming majority of Child Foundation's revenues (including funds supplied by LAHIJI and VAHID) were sent to Iran.

(5)    On or about December 29 and 30, 1999, Mehrdad Yasrebi issued tax deductible donation receipts on behalf of Child Foundation for HOSSEIN LAHIJI and NAJMEH VAHID (as Mrs. Hossein Lahiji) for checks written by VAHID for $200,000 and $75,000 dated in December, 1999, and written by VAHID on a business account of LAHIJI payable to Child Foundation.

(6)    On or about September 29, 2000, Mehrdad Yasrebi issued a $400,000 tax deductible donation receipt on behalf of Child Foundation to HOSSEIN LAHIJI and NAJMEH

**Page 9 - INDICTMENT**

VAHID ("Dr. & Mrs. Hossein Lahiji") for a check written by VAHID dated September 20, 2000, on a business account of LAHIJI payable to Child Foundation.

(7)    On a date unknown to the grand jury between May, 2000 and May, 2005, Child Foundation and Refah Kudak aka Child Foundation Iran invested IRR 5,353,200,000, or the equivalent of $680,000 more or less, supplied to Child Foundation by HOSSEIN LAHIJI and NAJMEH VAHID, with Bank Karafarin in Iran for a five-year term at 20% interest in violation of the embargo.

(8)    On or about December 29, 2000, Mehrdad Yasrebi issued a $200,000 tax deductible donation receipt on behalf of Child Foundation to HOSSEIN LAHIJI and NAJMEH VAHID ("Dr. & Mrs. Hossein Lahiji") for a check that VAHID had written on LAHIJI's business account dated December 4, 2000, payable to Child Foundation.

(9)    From on or about April 27, 2001 to on or about April 26, 2005, Mehrdad Yasrebi and Child Foundation wire transferred approximately $5.4 million in Child Foundation funds in approximately thirty-four transactions, including funds provided by defendants LAHIJI and VAHID, to a bank account in Switzerland. The funds were then transferred and deposited into the accounts of IRANSHAHI and Refah Kudak aka Child Foundation Iran at Bank Melli, an entity of the Government of Iran. The transfers and deposits, in part, constituted prohibited transactions related to goods and services in and to Iran and the Government of Iran, and goods and services of Iranian origin, and new investments in Iran, each transfer comprising a separate overt act.

(10)    From on or about December 26, 2001, through on or about July 13, 2006, Mehrdad Yasrebi and Child Foundation provided at least $24,300 of Child Foundation funds for

**Page 10 - INDICTMENT**

salary and services performed in Iran by AHMAD IRANSHAHI by making at least eight separate payments through Razieh IRANSHAHI in Sweden, each payment constituting a separate overt act.

(11)    On or before approximately July, 2002 HOSSEIN LAHIJI wrote to Ayatollah Mazaheri of Iran inquiring whether it would be permissible under Islamic law for him to make a long-term investment in one of Iran's Islamic banks, to which Ayatollah Mazaheri later responded "In the name of God, it is a great and sound [decision]."

(12)    On or about March 13, 2003, Mehrdad Yasrebi deposited a $350,000 check dated December 18, 2002, payable to Child Foundation issued by NAJMEH VAHID on a business account of HOSSEIN LAHIJI.  Yasrebi issued a tax deductible Child Foundation receipt to "Dr. and Mrs. Lahiji" for the $350,000 check dated December 25, 2002.

(13)    During fiscal years 2003-2004 and 2004-2005, Mehrdad Yasrebi and Child Foundation supplied Refah Kudak aka Child Foundation Iran with approximately $245,000 pursuant to the "agreement between [Refah Kudak aka Child Foundation Iran] and the Child Foundation" to purchase one or more buildings, office equipment, office  furniture, computer equipment, and vehicles in Iran, in violation of the Iranian embargo.  During fiscal years 2004 - 2007, Mehrdad Yasrebi and Child Foundation supplied Refah Kudak aka Child Foundation Iran with approximately $461,000 pursuant to agreement to pay its overhead and costs of operation in Iran, including payroll, brokerage fees, professional fees, building maintenance, rent, and utilities, in violation of the Iranian embargo.

(14)    On or about July 28, 2003, HOSSEIN LAHIJI issued a check for $350,000 payable to

Page 11 - INDICTMENT

Child Foundation. On or about July 29, 2003, Mehrdad Yasrebi issued a tax deductible charitable donation receipt to LAHIJI.

(15)    On or about January 22-23, 2004, Mehrdad Yasrebi emailed Azar Djalili of Emdad Kudak in Switzerland, stating "I just wired $220,000 to Switzerland this morning. You should have it on Monday" to which Djalili replied, in pertinent part, "Sure we transfer to Iran as soon as come." Describing a new Swiss bank account opened by Emdad Kudak, Djalili also wrote to Yasrebi, "With new acc we have more power againt (sic) all kind of enbargo (sic) even through UN, We are proid (sic) of it."

(16)    From on or about March 4, 2005, to on or about June 23, 2008, Mehrdad Yasrebi and Child Foundation wire-transferred at least $3,626,425 of Child Foundation funds, including funds supplied by LAHIJI and VAHID, in at least 20 separate transactions to Iranian-based brokers and traders Sehawi Trading Company, LLC, Ramak General Trading Company, LLC, and Damavand Star General Trading, LLC, operating in satellite offices located in the United Arab Emirates, and, beginning in 2006, to such brokers/traders through designated offshore bank accounts opened by Child Foundation and Yasrebi in Dubai, UAE. The transactions were designed to evade the Iranian embargo by concealing certain commercial food transactions and cash transfers to Iran in violation of the embargo, each transaction comprising an overt act.

(17)    From on or about September 10, 2005, to on or about August 17, 2006, AHMAD IRANSHAHI, Mehrdad Yasrebi and Child Foundation arranged for Child Foundation to wire transfer $150,000 to Ramak General Trading, an Iranian business with a branch in Dubai, ostensibly for the purchase and shipment of rice and corn oil to Iran. They then

Page 12 - INDICTMENT

arranged for a substantial portion of the U.S.-source funds to be transferred to IRANSHAHI and Refah Kudak in Iran. They arranged for the food purchased with the remaining funds to be delivered to Iran aboard an Iranian-flagged vessel, and diverted it mid-shipment to a third party as part of a commercial transaction. Ramak issued an inflated invoice to Child Foundation, and a parallel invoice to "Child Foundation Iran" (Refah Kudak) for about half the quantities shown in the larger invoice. IRANSHAHI thereafter falsely confirmed receipt of the larger food quantity to deceive Child Foundation's auditors, tax return preparers, the IRS and OFAC.

(18)   From on or about September 26, 2005, to on or about September 27, 2005, Mehrdad Yasrebi traveled to the Washington, D.C. area to seek approval from and coordinate with Iranian officials in the ostensible shipment of food commodities by Child Foundation through Dubai to Iran.

(19)   On or about September 29, 2005, AHMAD IRANSHAHI emailed a Child Foundation employee in Dubai that he intended to use a company to import food into Iran. The company would, in reality, deposit U.S.-source funds paid by Child Foundation into a Refah Kudak bank account. The deposits would represent up to half the total purchase price of "undistributed food."

(20)   On or about November 6, 2005, an employee of Refah Kudak aka Child Foundation Iran emailed a chart to AHMAD IRANSHAHI accounting for funds provided in Iran by LAHIJI and VAHID which referenced the purchase of a house, a "complex" in Shiraz, the payment of "Foundation expenses," and the investment of funds in Iran in 2003 and 2004 for five-year terms.

Page 13 - INDICTMENT

(21)    From on or about November 28, 2005 to on or about August 17, 2006, AHMAD IRANSHAHI, Mehrdad Yasrebi and Child Foundation arranged for Child Foundation to wire transfer $170,000 to Ramak General Trading, an Iranian business with a branch in Dubai, ostensibly for the purchase and shipment of rice, corn oil and ghee to Iran. Defendants then arranged for a substantial portion of the U.S.-source funds to be transferred to IRANSHAHI and Refah Kudak in Iran. Defendants arranged for the food purchased with the remaining funds to be delivered to Iran aboard an Iranian-flagged vessel, and diverted it mid-shipment to a third party as part of a commercial transaction. Ramak issued an inflated invoice to Child Foundation, and a parallel invoice to "Child Foundation Iran" (Refah Kudak) for about half the quantities shown in the larger invoice. IRANSHAHI thereafter falsely confirmed receipt of the larger food quantity in order to deceive Child Foundation's auditors, tax return preparers, the IRS and OFAC.

(22)    On or about January 24, 2006, an employee of Refah Kudak aka Child Foundation Iran emailed an explanation of how U.S.-source funds sent by Child Foundation to Iran were processed. According to the employee, an account was established on behalf of an aid recipient at Bank Melli in Iran, facilitating the acquisition of goods and services in Iran. "[A]ll aid applicants have cards which enable them to use the ATM machines" in Iran.

(23)    On or about January 28, 2006, an employee of Refah Kudak aka Child Foundation Iran emailed AHMAD IRANSHAHI with a chart accounting for funds provided in Iran by HOSSEIN LAHIJI and NAJMEH VAHID with a note that referenced the fact that LAHIJI retained ownership of approximately $282,000 and that other funds had been deposited in a savings account "on behalf of the Foundation" up to a ceiling of $350,000.

Page 14 - INDICTMENT

(24)   On or about February 24, 2006, MEHRDAD YASREBI composed an email falsely claiming that "CHILD FOUNDATION USA only sends food, clothing and medicine to Iran. No cash transfer is ever made to Iran by CHILD FOUNDATION, except when specifically permitted by the Office of Foreign Affairs."

(25)   On or about March 6, 2006, and again on May 2, 2006, Mehrdad Yasrebi and Child Foundation provided tax deductible donation receipts for 2005 to HOSSEIN LAHIJI for a $200,000 check payable to Child Foundation that was dated December 31, 2005 and issued by NAJMEH VAHID on a business account of LAHIJI. The check was deposited to a Child Foundation account on March 2, 2006.

(26)   On or about March 12, 2006, Mehrdad Yasrebi emailed AHMAD IRANSHAHI that he would not be able to obtain a letter of credit from any U.S. banks because they were "all scared of dealing with Iran," and that they had to "think of a better way" to fund the food commodities program. Yasrebi indicated that he would contact a representative of Ramak General Trading to do so.

(27)   From on or about April 26, 2006, to on or about August 12, 2007, Mehrdad Yasrebi, Child Foundation and AHMAD IRANSHAHI arranged for the wire transfer of $113,000 of Child Foundation funds to Armiti Group in Dubai, U.A.E., ostensibly for the purchase and shipment of rice to Iran through Ramak General Trading. Defendants then arranged for a substantial portion of the U.S.-source funds to be transferred to IRANSHAHI and Refah Kudak in Iran. Defendants arranged for the food purchased with the remaining funds to be delivered to Iran aboard an Iranian-flagged vessel, and diverted it mid-shipment to a third party as part of a commercial transaction. Ramak issued an inflated

Page 15 - INDICTMENT

invoice to Child Foundation. IRANSHAHI thereafter falsely confirmed receipt of the larger food quantity to deceive Child Foundation's auditors, tax return preparers, the IRS and OFAC.

(28) On or about April 30, 2006, AHMAD IRANSHAHI emailed a representative of Ramak General Trading, instructing him how to structure food commodities transactions. IRANSHAHI stated that Ramak could "decide for the unit price of the goods and by changing the unit price you can balance between the total amount received and the goods you shipped . . . . Please remit the remaining balance to me as soon as you can."

(29) On or about May 12, 2006, AHMAD IRANSHAHI emailed a representative of Ramak General Trading, stating that for the purposes of a receipt for food commodities, "if the rates and amounts of the merchandise do not match, it can be adjusted later. . . . [t]he remainder of the money transfer sent to Ramak's account was supposed to be deposited into Bonyad Kudak's account by May 11, 2006."

(30) From on or about May 16, 2006, to on or about August 16, 2007, Mehrdad Yasrebi, Child Foundation and AHMAD IRANSHAHI arranged for $275,000 of Child Foundation's funds to be wire transferred to Armiti Group in Dubai to pre-pay the face value of an invoice for rice from Ramak General Trading to be shipped to Iran. Defendants arranged with Ramak for a smaller quantity of food to be delivered aboard an Iranian flagged vessel, ultimately diverting it mid-shipment to a third party as part of a commercial transaction. IRANSHAHI thereafter falsely confirmed receipt of the larger quantity of food to deceive Child Foundation's auditors, tax return preparers, the IRS and OFAC.

(31) On or about May 22, 2006, while Mehrdad Yasrebi was in Iran, an employee of Child

Page 16 - INDICTMENT

Foundation Dubai emailed AHMAD IRANSHAHI regarding a food commodities shipment. The email confirmed that the shipment had been diverted from Refah Kudak aka Child Foundation Iran to a Iranian third party cooperative, stating that "we issued" a corrected manifest to reflect the cooperative as the receiver. "But this solution will not work for a long time since the port will be suspicious about this." The email further discussed placing the name of Child Foundation on future invoices in the first and last steps, but that the "[p]rocess in the middle is not important because it is so different in each country, no body (sic) cares or can prove anything .... the last step (purchase invoice) ... is important for Childfoundation (sic) as a document."

(32)    On or about May 27, 2006, AHMAD IRANSHAHI emailed Mehrdad Yasrebi that Ramak General Trading was not keeping its previously-reached agreement "for us to receive 50% of that transferred amount in merchandise and the rest as cash as Riyal (sic) to be received in Iran." IRANSHAHI stated that Ramak was refusing to generate inflated receipts to be provided to Child Foundation, as agreed. IRANSHAHI discussed the food commodities "guaranteed to sell in Iran" in commercial transactions.

(33)    On or about May 31, 2006, Mehrdad Yasrebi instructed a Child Foundation auditor and tax return preparer to delete reference to the fact that Child Foundation sent money through Switzerland to Iran from its audit for 2005 and 2006.

(34)    On or about June 27, 2006, AHMAD IRANSHAHI emailed a representative of Ramak General Trading instructing him to send two post-dated checks to Iran payable to Refah Kudak.

(35)    On or about August 16, 2006, AHMAD IRANSHAHI, in his capacity as Director of

Page 17 - INDICTMENT

Refah Kudak aka Child Foundation Iran, issued a document addressed to Child Foundation at the request of Mehrdad Yasrebi, falsely confirming receipt of food in Iran which had actually been diverted to a third party.

(36) On or about September 25, 2006, AHMAD IRANSHAHI faxed a document from Iran to Mehrdad Yasrebi showing that HOSSEIN LAHIJI had approximately $675,000 on account with Refah Kudak aka Child Foundation Iran as a "deposit in bank."

(37) On or about October 10, 2006, AHMAD IRANSHAHI faxed a letter to Mehrdad Yasrebi with a chart showing multiple deposits of Child Foundation funds to "our Dubai account" totaling approximately $558,000 for fiscal year 2006. According to the letter, the funds were initially received by "Ramack Association" and "Damavand Association," and that Refah Kudak aka Child Foundation Iran had "received in Iran" approximately $478,000 of the funds.

(38) From on or about October 10, 2006, to on or about July 23, 2008, Mehrdad Yasrebi, Child Foundation and AHMAD IRANSHAHI arranged for the wire transfer of $47,486 of Child Foundation funds to Damavand Star General Trading in Dubai to pay the face value of an invoice for food commodities to be shipped to Iran. Defendants arranged for a smaller quantity of commodities to be shipped aboard an Iranian-flagged vessel, then diverted them mid-shipment to a third party recipient in Iran. IRANSHAHI thereafter falsely confirmed receipt of the food to deceive Child Foundation's auditors, tax return preparers, the IRS and OFAC.

(39) On or about October 17, 2006, Mehrdad Yasrebi called AHMAD IRANSHAHI, discussing accounting documents that IRANSHAHI was preparing for Child

Page 18 - INDICTMENT

Foundation's auditor. Yasrebi instructed IRANSHAHI to prepare documents that would show that Child Foundation was a part of a chain of charities in Iran. Yasrebi told IRANSHAHI to look at what Yasrebi had written, and prepare the documents accordingly in order to silence the auditor.

(40)    On or about October 20, 2006, Mehrdad Yasrebi and AHMAD IRANSHAHI discussed the need to create documents to "get rid of this auditor" who was questioning their expenditures in Iran. IRANSHAHI stated that he could make up financial records to say whatever was necessary, and the auditor would not be able to come to Iran to check on their accuracy. IRANSHAHI said that commodities brokers Ramak and Damavand actually put cash in Refah Kudak's accounts -- he only received about ten percent of the food that was documented in the commodities invoices. Yasrebi and IRANSHAHI discussed the creation of phony receipts that would conceal the true nature of the food transactions..

(41)    On or about October 21, 2006, Mehrdad Yasrebi told AHMAD IRANSHAHI that there should be no sign that Child Foundation was sending money to Iran, that bigger ones had been destroyed for this kind of thing, and that they would be in hot water if they were caught.

(42)    On or about October 29, 2006, Mehrdad Yasrebi instructed AHMAD IRANSHAHI to summarize Refah Kudak's aka Child Foundation Iran's audit reports for Child Foundation's U.S. auditor, but not to indicate any connection between Child Foundation and Refah Kudak.

(43)    On or about October 29, 2006, Mehrdad Yasrebi commented upon sample memoranda of

Page 19 - INDICTMENT

understanding created by AHMAD IRANSHAHI for Child Foundation's auditor and sent to Yasrebi for his approval.  Yasrebi instructed IRANSHAHI to delete portions of the memoranda, observing that the deleted portions, "will cause problems and will not be of any help to us....prepare exactly the same [memoranda] with several other charities...."  Yasrebi also commented upon a proposed letter written by IRANSHAHI regarding the withdrawal of funds from the account of HOSSEIN LAHIJI and NAJMEH VAHID, stating "Dear Farhad - Why have you correlated these monies to us?  You were not supposed to...the Foundation has donated this money to Refah-e Koodak, and you were not supposed to say that they were held in trust in the bank."

(44)    On or about October 31, 2006, Mehrdad Yasrebi told AHMAD IRANSHAHI that even a fool could tell from IRANSHAHI's report that Child Foundation was sending money to Iran.

(45)    On or about November 13, 2006, Mehrdad Yasrebi told AHMAD IRANSHAHI that documents IRANSHAHI had created and sent for Child Foundation's auditors -- supposed MOUs between Refah Kudak and other Iranian charities – had the wrong fiscal year. Yasrebi told IRANSHAHI that he wanted documents reflecting earlier years like 2005, 2004 and 2003.  IRANSHAHI responded that they were only "samples" and the dates could be easily changed.  IRANSHAHI asked Yasrebi not to provide the Child Foundation auditors with a copy of an audit conducted in Iran because it might contradict the position taken by the LAHIJIs.

(46)    From on or about November 21, 2006 to on or about November 28, 2006, Child Foundation provided documents to its auditors supplied by AHMAD IRANSHAHI in

Page 20 - INDICTMENT

Iran. The documents, in some instances false and deceptive, included: (a) purported MOUs between Refah Kudak aka Child Foundation Iran and other charities in Iran, and (b) receipts purporting to account for Child Foundation's funds spent in Iran for food, rental payments, bicycles, carpeting, and donations to charities.

(47) On or about November 26, 2006, Mehrdad Yasrebi instructed AHMAD IRANSHAHI to delete certain computer files because they might evidence that Child Foundation was sending money to Iran. Yasrebi stated that he did not want there to be any indication that Child Foundation Iran (Refah Kudak) was involved with Child Foundation accounts in the U.S. Yasrebi continued that the records could cause problems and negate all of the effort that they had put into showing that no money was going to Iran. Yasrebi provided IRANSHAHI with the "international password" to enable IRANSHAHI to delete the records, saying that they had to be careful because many persons were being arrested in the United States for similar conduct.

(48) On or about November 27, 2006, HOSSEIN LAHIJI and NAJMEH VAHID transmitted a fax to AHMAD IRANSHAHI and Mehrdad Yasrebi asking them to verify an accounting for funds they had donated to Child Foundation between 1999 and 2005. The fax included a reference to a special account containing $350,000, and requested a copy of "bank statements for the joint account."

(49) On or about November 28, 2006, AHMAD IRANSHAHI called Mehrdad Yasrebi about a report that was about to be released that would show that IRANSHAHI had taken money from the Lahiji account without advance approval. Yasrebi directed IRANSHAHI to contact HOSSEIN LAHIJI directly to take care of the matter.

Page 21 - INDICTMENT

(50)    On or about November 28, 2006, MERHDAD Yasrebi spoke with NAJMEH VAHID about AHMAD IRANSHAHI having taken $50,000 from the LAHIJI/VAHID account in Iran without their advance approval. Later that day, Yasrebi forwarded a letter, originally faxed by LAHIJI, containing LAHIJI's after-the-fact approval for the taking of the $50,000 from his account in Iran without his advance approval.

(51)    On January 10, 2007, Mehrdad Yasrebi instructed a Child Foundation database manager to "get rid of" a portion of Child Foundation's records relating to international matters, "ASAP, hopefully maybe today." Yasrebi stated that he "wanted it [to be] totally deleted as you did with Swiss .... Please, if you could get rid of it today ...."

(52)    On or about January 16, 2007, Mehrdad Yasrebi spoke with AHMAD IRANSHAHI about deleting an email regarding Child Foundation funding university tuition in Iran. Yasrebi asked IRANSHAHI to be extra careful "so that no one can find out about the money we are sending you .... we'll be devastated ...." Yasrebi further stated, "If they find out about this, we are ruined. Should they seize the computers, they'll find it for sure."

(53)    On or about January 21, 2007, an employee of Child Foundation in Dubai forwarded an email to Mehrdad Yasrebi and AHMAD IRANSHAHI confirming that funds paid to Ramak for commodities transactions would be deposited to the accounts of "Armiti Group or Child Foundation -- Dubai," and "the second payment directly to Mr. Iranshahi."

(54)    On or about January 22, 2007, AHMAD IRANSHAHI asked Mehrdad Yasrebi to send $320,000 of Child Foundation funds to him in Iran, noting that he had not yet paid the tithing to LAHIJI and that some of the funds were for university tuition. IRANSHAHI

Page 22 - INDICTMENT

asked Yasrebi to send the $320,000 through "Damavand," a commodities broker in Dubai. Yasrebi did so on or about January 25, 2007, and Damavand provided falsified documents to disguise the transactions.

(55)    On or about February 12, 2007, after reviewing a draft letter emailed to him by AHMAD IRANSHAHI for his approval, Mehrdad Yasrebi responded that "the section where you have stated that no money has been received during the last two years" proved that Child Foundation had previously exported money to Iran, and that they should not provide any leads.

(56)    On or about February 13, 2007, an employee of Child Foundation Dubai emailed defendant AHMAD IRANSHAHI inquiring whether he had received commodity broker Ramak's payment to Child Foundation. "If you have received how much you have recieved? (sic)"

(57)    On or about March 3, 2007, defendant Mehrdad Yasrebi told an individual in Iran that Grand Ayotallah Shirazi in Iran had confirmed their operation, adding that Shirazi had given Child Foundation half of the funds that Child Foundation collected on his behalf.

(58)    In or after May, 2007, Refah Kudak aka Child Foundation Iran issued a financial statement that included an accounting for a debt owed to HOSSEIN LAHIJI "based on the agreement between the Institute and Dr. Lahiji." The financial statement characterized the debt as an account payable and a "long term investment" with Bank Karafarin in Iran of IRR 5,353,200,000 (about $680,000) for a term of five years earning 20% interest per annum. The statement reflected interest earned to that point in time as a debt to LAHIJI. Upon maturity, the principal was to be used for construction of health

Page 23 - INDICTMENT

care and education complexes in Iran under the supervision of Refah Kudak.

(59)    On or about May 28, 2007, Mehrdad Yasrebi told a prospective member of the Board of Directors for Child Foundation that Grand Ayatollah Makarem Shirazi in Iran had declared Child Foundation to be an appropriate charity for receiving donations, and that he had letters from Ayatollahs Shirazi, Khamenei and Sanei.

(60)    On or about July 5, 2007, defendant Mehrdad Yasrebi spoke with a prospective donor about transferring $100,000 cash into Iran for a construction project that the donor wanted to undertake.  Yasrebi suggested that the individual funnel the money through Child Foundation as a donation, but with an undisclosed side agreement with AHMAD IRANSHAHI.  Under the agreement, IRANSHAHI would use the money to purchase food, but would return it to the donor once it reached Iran, supposedly using funds raised in Iran.

(61)    On or about July 15, 2007, AHMAD IRANSHAHI emailed a Child Foundation employee in Dubai regarding payment for a supposed food commodities shipment.  IRANSHAHI directed the employee to provide a check for 769,650 AED (approximately $206,539) to commodities broker Ramak General Trading in Dubai.  In exchange, the employee was to receive a post-dated check in the same amount from Ramak.

(62)    On or about July 17, 2007, Mehrdad Yasrebi instructed AHMAD IRANSHAHI about how to create false documents that he said would successfully deceive the Child Foundation auditor/tax return preparer about the expenditure of US-source funds in Iran.

(63)    On or about July 17, 2007, an employee of Child Foundation emailed AHMAD IRANSHAHI with attached summaries of certain alleged Child Foundation expenditures

in Iran, asking IRANSHAHI to concoct records and receipts with figures that were identical to those attached to the email so that they could be presented to a Child Foundation auditor.

(64)    On or about July 20, 2007, AHMAD IRANSHAHI told Mehrdad Yasrebi that he had saved some of the Child Foundation money which had come to Iran from the United States. Yasrebi corrected him, stating that they had sent clothing and food, not money, to Iran. Yasrebi instructed IRANSHAHI to say that a portion of the food provided by Child Foundation had been given to other Iranian charities, but that he had not saved any money.

(65)    On or about July 27, 2007, Mehrdad Yasrebi and AHMAD IRANSHAHI discussed how to explain cash distributions to recipients in Iran. IRANSHAHI planned to reflect the cash as food certificates. Yasrebi disagreed, instructing IRANSHAHI to reflect the payments as cash, but to say that the cash came from donors in Iran.

(66)    On or about July 29, 2007, AHMAD IRANSHAHI provided a written confirmation for Child Foundation's auditor(s) that he had received specified food commodities in Iran from Child Foundation. The confirmation was false because IRANSHAHI had received neither all of the shipments nor all of the quantities described in the document.

(67)    On or about February 18, 2008, Mehrdad Yasrebi instructed AHMAD IRANSHAHI not to disclose to anyone a portion of a draft letter written by IRANSHAHI revealing that the recipients of food commodities sent to Iran by Child Foundation routinely resold them commercially for cash to the supplier, without ever taking delivery of any food.

(68)    On or about March 17, 2008, AHMAD IRANSHAHI emailed a Child Foundation

Page 25 - INDICTMENT

employee in Dubai requesting copies of deposit slips for money deposited in Bank Melli in Dubai, a bank subject to the Iranian embargo and designated by the Treasury Department as owned or controlled by the Government of Iran.

## COUNT 2
### (Conspiracy to Commit Money Laundering)

20. The Introductory Allegations are incorporated as if fully set forth herein.

21. From on or about December 31, 1998 to on or about March 2, 2007, in the District of Oregon and elsewhere, defendants AHMAD IRANSHAHI a.k.a. "Farhad," HOSSEIN LAHIJI and NAJMEH VAHID did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, that is, to transport, transmit and transfer monetary instruments and funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, that is, a violation of the Iranian Embargo, an offense involving Section 206 of the International Emergency Economic Powers Act, Title 50, United States Code, Section 1705, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

All in violation of Title 18, United States Code, Section 1956(h).

///

///

///

///

///

**Page 26 - INDICTMENT**

## FORFEITURE ALLEGATION

22.    Upon conviction of the offense alleged in Count 2 of this Indictment, defendants

AHMAD IRANSHAHI, HOSSEIN LAHIJI and NAJMEH VAHID shall forfeit to the United

States pursuant to 18 U.S.C. § 982(a)(1) all property, real and personal, involved in the money

laundering offense and all property traceable to such property.


DATED this __15__ day of December 2010.

A TRUE BILL.


OFFICIATING FOREPERSON


Presented by:

DWIGHT C.  HOLTON, OSB #09054
United States Attorney


CHARLES F. GORDER, JR., OSB #91287
DAVID L. ATKINSON, OSB #75021
Assistant United States Attorneys


**Page 27 - INDICTMENT**